| | |
|---|---|
| 1 | Rollin A. Ransom (State Bar No. 196126) |
| | rransom@sidley.com |
| 2 | Lauren M. De Lilly (State Bar No. 301503) |
| | ldelilly@sidley.com |
| 3 | Monique Candiff (State Bar No. 340315) |
| | mcandiff@sidley.com |
| 4 | SIDLEY AUSTIN LLP |
| | 555 West Fifth Street |
| 5 | Los Angeles, CA 90013 |
| | Telephone:  (213) 896-6000 |
| 6 | Facsimile: (213) 896-6600 |
| 7 | *Attorneys for Defendant Reservoir Media Management, Inc.* |
| 8 | |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PETER J. BYRNE, an individual, and GRAHAM FISHER, as heir to Rob Fisher, an individual, both doing business as Naked Eyes, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>RESERVOIR MEDIA MANAGEMENT, INC.,  a Delaware corporation; and DOES 1 through 10, inclusive. <br><br>　　　　Defendant. | Case No. 2:22-cv-04824 PA (MARx) <br><br>Hon. Percy Anderson <br><br>**DEFENDANT RESERVOIR MEDIA MANAGEMENT, INC.'S MEMORANDUM IN SUPPORT OF EVIDENTIARY OBJECTIONS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br>Date:　May 15, 2023 <br>Time:　1:30 p.m. <br>Place:　Courtroom 9A |

1

DEFENDANT RESERVOIR MEDIA MANAGEMENT, INC.'S MEMORANDUM IN SUPPORT OF EVIDENTIARY OBJECTIONS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to § II.A.5. of the Civil Trial Scheduling Order in this action (ECF No. 21) (the "CTS Order"), Defendant Reservoir Media Management, Inc. ("Reservoir") respectfully submits this memorandum in support of Reservoir's evidentiary objections to the evidence submitted by Plaintiffs Peter J. Byrne ("Byrne") and Graham Fisher ("Fisher" and together, "Plaintiffs") in support of Plaintiffs' motion for partial summary judgment (ECF No. 26).  As required by the CTS Order, this memorandum tracks the paragraph numbers of Plaintiffs' Separate Statement of Undisputed Facts and Conclusions of Law in Support of Plaintiffs' Motion for Partial Summary Judgment (ECF No. 31-1) ("Separate Statement").

<u>Separate Statement Paragraph 8:</u>

Objection to paragraph 8 of the Declaration of Peter J. Byrne on foundation grounds in that Byrne fails to lay any foundation as to his characterization of Naked Eyes' synth-pop sound as "unique."  *See* Fed. R. Civ. P. 602, 901.

<u>Separate Statement Paragraph 9:</u>

Objection to paragraph 9 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 9 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis.  *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'").  Contrary to his assertion in paragraph 9, Byrne testified during his deposition that several individuals, including producers, an engineer, and session musicians contributed to the creation of each of the sound recordings at issue, and that EMI Records Ltd. ("EMI") and its affiliates made decisions as to the order and arrangement of individual tracks on the albums, and decisions as to which tracks would be released as singles, including admitting that EMI elected to change the composition, configuration, and cover art of the album *Burning Bridges* when it was released as *Naked Eyes* in the U.S., including eliminating two tracks.  *See* Declaration

1

of Lauren M. De Lilly ("De Lilly Opp. Decl.") Ex. E at 50:5-53:15, 84:8-18, 86:12-21, 88:11-90:4, 100:7-15, 100:21-104:2, 107:9-108:14, 109:11-22.

Separate Statement Paragraph 10:

Objection to paragraph 11 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 11 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis. *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'"). Contrary to his assertions in paragraph 11 that "EMI did not supervise the creative process," Byrne testified during his deposition (1) that EMI introduced Naked Eyes to the producer Tony Mansfield, engaged Mr. Mansfield, and paid him (and that Mr. Mansfield contributed to the creative and recording process); (2) that EMI owned the recording studio Abbey Road at which *Burning Bridges/Naked Eyes* was recorded and approved of Naked Eyes' use of that studio, that EMI approved of the studio at which the album *Fuel for the Fire* was recorded; (3) that EMI employed and supplied the sound recording engineer for both albums (and that the engineer contributed to the recording process); (4) that at least one representative from EMI attended certain recording sessions; (5) that Naked Eyes utilized recording and music equipment at Abbey Road (which was owned by EMI), and (6) that EMI and its affiliates made decisions as to the order and arrangement of individual tracks on the albums, and decisions as to which tracks would be released as singles, including admitting that EMI elected to change the composition, configuration, and cover art of the album *Burning Bridges* when it was released as *Naked Eyes* in the U.S., including eliminating two tracks. *See* De Lilly Opp. Decl., Ex. E at 50:5-53:10, 66:3-67:3, 70:13-22, 71:5-72:25, 74:1-13, 74:18-23, 76:4-77:17, 79:22-80:12, 81:20-23, 84:8-18, 86:12-21, 88:11-19; 93:13-19, 101:17-102:11, 114:13-19, 115:5-8.

Separate Statement Paragraph 11:

Objection to paragraph 12 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 12 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis.  *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'").  Contrary to his assertions in paragraph 12, Byrne testified during his deposition that EMI introduced Naked Eyes to the producer Tony Mansfield, engaged Mr. Mansfield, and paid him, that EMI owned the recording studio Abbey Road at which *Burning Bridges/Naked Eyes* was recorded and approved of Naked Eyes' use of that studio, that EMI approved of the studio at which the album *Fuel for the Fire* was recorded, and that EMI employed and supplied the sound recording engineer for both albums.  See De Lilly Opp. Decl., Ex. E at 66:3-67:3, 77:12-17, 79:22-80:12, 81:20-23, 93:13-19, 101:17-102:11, 114:13-19, 115:5-8.

Separate Statement Paragraph 12:

Objection to paragraph 15 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 15 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis.  *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'"). Contrary to his assertions in paragraph 15 that Naked Eyes "either owned or rented the majority of instruments utilized" during the recording process, Byrne testified during his deposition that naked Eyes utilized the recording and music equipment at Abbey Road, which was owned by EMI.  *See* De Lilly Opp. Decl., Ex. E at 74:1-13, 74:18-23, 76:4-77:5.

<u>Separate Statement Paragraph 13:</u>

Objection to paragraph 17 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 17 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis. *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'"). Contrary to his assertions in paragraph 17 that EMI did not dictate "when" or "where" Naked Eyes worked, Byrne testified during his deposition that EMI owned the recording studio Abbey Road at which *Burning Bridges/Naked Eyes* was recorded and approved of Naked Eyes' use of that studio, that EMI approved of the studio at which the album *Fuel for the Fire* was recorded, and that Naked Eyes had to coordinate recording studio time through EMI. *See* De Lilly Opp. Decl., Ex. E at 66:3-67:3, 69:22-70:8, 114:13-19, 115:5-8.

<u>Separate Statement Paragraph 15:</u>

Objection to paragraph 20 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 20 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis. *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'"). Contrary to his assertions in paragraph 20 that Naked Eyes "chose and/or approved the recordings that would be included in the *Naked Eyes* album and chose and/or approved the sequence in which the recordings would appear on the album, Byrne testified during deposition that EMI and its affiliates made decisions as to the order and arrangement of individual tracks on the albums, and decisions as to which tracks would be released as singles, including admitting that EMI elected to change the composition, configuration, and cover art of the album *Burning Bridges*

-4-

when it was released as *Naked Eyes* in the U.S., including eliminating two tracks. *See* De Lilly Opp. Decl., Ex. E at 50:5-53:10, 71:5-72:25, 157:24-158:2, 159:2-18, 160:9-16, 160:25-161:11.

Separate Statement Paragraph 21:

Objection to paragraph 16 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 16 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis. *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'"). Contrary to his assertions in paragraph 16 that Naked Eyes "chose and/or approved all musicians, producers, engineers and other personnel who assisted with the recording" of the works at issue, Byrne testified during his deposition that EMI introduced Naked Eyes to the producer Tony Mansfield, engaged Mr. Mansfield, and paid him, and that EMI employed and supplied the sound recording engineer for both albums. *See* De Lilly Opp. Decl., Ex. E at 77:12-17, 79:22-80:12, 81:20-23, 93:13-19, 101:17-102:11.

Separate Statement Paragraph 24:

Objection to paragraph 26 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 26 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis. *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'"). Contrary to his assertions in paragraph 26 that "EMI did not assign the band additional projects beyond the tracks, albums and singles outlined in the Agreement," Byrne testified during his deposition that under the Agreement, EMI had the right to commission the making of audio-visual performances (*i.e.*, music videos)

featuring Naked Eyes and that Naked Eyes in fact performed for music videos of the works at issue commissioned by EMI. De Lilly Opp. Decl., Ex. E at 132:15-133:13. Byrne further testified that under the Agreement, EMI had the right to require Naked Eyes to attend photographic sessions, and that Naked Eyes participated in photographic sessions and made promotional appearances arranged by EMI in connection with the sound recordings at issue. De Lilly Opp. Decl., Ex. E at 133:16-135:15.

Separate Statement Paragraph 25:

Objection to paragraph 10 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 10 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis. *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'"). Contrary to his assertions in paragraph 10 that Naked Eyes "primarily controlled the creative direction for the sound recordings," Byrne testified during his deposition (1) that EMI introduced Naked Eyes to the producer Tony Mansfield, engaged Mr. Mansfield, and paid him (and that Mr. Mansfield contributed to the creative and recording process); (2) that EMI owned the recording studio Abbey Road at which *Burning Bridges/Naked Eyes* was recorded and approved of Naked Eyes' use of that studio, that EMI approved of the studio at which the album *Fuel for the Fire* was recorded; (3) that EMI employed and supplied the sound recording engineer for both albums (and that the engineer contributed to the recording process); (4) that at least one representative from EMI attended certain recording sessions; (5) that Naked Eyes utilized recording and music equipment at Abbey Road (which was owned by EMI), and (6) that EMI and its affiliates made decisions as to the order and arrangement of individual tracks on the albums, and decisions as to which tracks would be released as singles, including admitting that EMI elected to change the

1  composition, configuration, and cover art of the album *Burning Bridges* when it was
2  released as *Naked Eyes* in the U.S., including eliminating two tracks.  *See* De Lilly
3  Opp. Decl., Ex. E at 50:5-53:10, 66:3-67:3, 70:9-22, 71:5-72:25, 74:1-13, 74:18-23,
4  76:4-77: 17, 79:22-80:12, 81:20-23, 84:8-18, 86:12-21, 88:11-19, 93:13-19, 101:17-
5  102:11, 114:13-19, 115:5-8; 157:24-158:2, 159:2-18, 160:9-16, 160:25-161:11.

Separate Statement Paragraph 26:

Objection to paragraph 13 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 13 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis.  *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'").  Contrary to his assertions in paragraph 13 that Naked Eyes chose the studio at which the sound recordings at issue were created, Byrne testified during his deposition that EMI owned the recording studio Abbey Road at which *Burning Bridges/Naked Eyes* was recorded and approved of Naked Eyes' use of that studio, that EMI approved of the studio at which the album *Fuel for the Fire* was recorded, and that Naked Eyes had to coordinate recording studio time through EMI.  *See* De Lilly Opp. Decl., Ex. E at 66:3-67:3, 69:22-70:8, 114:13-19, 115:5-8.

Separate Statement Paragraph 30:

Objection to paragraph 19 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 19 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis.  *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'").  Contrary to his assertions in paragraph 19 that Naked Eyes "maintained complete control over their recording schedules, choosing when" they

would work, Byrne testified during this deposition that Naked Eyes had to coordinate recording studio time through EMI. *See* De Lilly Opp. Decl., Ex. E at 69:22-70:8.

Separate Statement Paragraph 31:

Objection to paragraph 14 of the Declaration of Peter J. Byrne on the ground of the sham affidavit rule in that Byrne's statements in paragraph 14 conflict with his prior deposition testimony, and should be disregarded by the Court on that basis. *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'"). Contrary to his assertions in paragraph 14 that EMI "did not control when [or] where . . . recording sessions took place," Byrne testified during his deposition that EMI owned the recording studio Abbey Road at which *Burning Bridges/Naked Eyes* was recorded and approved of Naked Eyes' use of that studio, that EMI approved of the studio at which the album *Fuel for the Fire* was recorded, and that Naked Eyes had to coordinate recording studio time through EMI. *See* De Lilly Opp. Decl., Ex. E at 66:3-67:3, 69:22-70:8, 114:13-19, 115:5-8. Furthermore, contrary to the assertion in paragraph 14 that EMI "merely financed the studio sessions," Byrne testified during his deposition that (1) that EMI introduced Naked Eyes to the producer Tony Mansfield, engaged Mr. Mansfield, and paid him (and that Mr. Mansfield contributed to the creative and recording process); (2) that EMI employed and supplied the sound recording engineer for both albums (and that the engineer contributed to the recording process); (3) that at least one representative from EMI attended certain recording sessions; (4) that Naked Eyes utilized recording and music equipment at Abbey Road (which was owned by EMI), and (5) that EMI and its affiliates made decisions as to the order and arrangement of individual tracks on the albums, and decisions as to which tracks would be released as singles, including admitting that EMI elected to change the composition, configuration, and cover art of the album *Burning Bridges* when it was released as *Naked Eyes* in the U.S., including

eliminating two tracks. *See* De Lilly Opp. Decl., Ex. E at 50:5-53:10, 70:13-22, 71:5-72:25, 74:1-13, 74:18-23, 76:4-77:5, 77:12-17, 79:22-80:12, 81:20-23, 93:13-19, 101:17-102:11.

Separate Statement Paragraph 40:

Objection to paragraph 8 of the Declaration of Graham Fisher on the ground that Fisher's statement that he "executed" Plaintiffs' putative Notice of Termination calls for a legal conclusion and thus lacks foundation. Fed. R. Evid. 602, 703, 901. Fisher lacks foundation to testify as to what type of signature (*i.e.*, handwritten or Docusign) meets the standard for "executed by the author" required by 17 U.S.C. § 203(a) and further clarified by 37 C.F.R. § 201.10(c)(5), which determination is ultimately a legal question as to which Fisher is not qualified or competent to address.

Objection to paragraph 27 of the Declaration of Peter J. Byrne on the ground that Byrne's statement that he "executed" Plaintiffs' putative Notice of Termination calls for a legal conclusion and thus lacks foundation. Fed. R. Evid. 602, 703, 901. Byrne lacks foundation to testify as to what type of signature(*i.e.*, handwritten or Docusign) meets the standard for "executed by the author" required by 17 U.S.C. § 203(a) and further clarified by 37 C.F.R. § 201.10(c)(5), which determination is ultimately a legal question as to which Byrne is not qualified or competent to address.

Separate Statement Paragraph 45:

Objection to paragraph 8 of the Declaration of Graham Fisher on the ground that Fisher's statement that he "executed" Plaintiffs' putative Notice of Termination calls for a legal conclusion and thus lacks foundation. Fed. R. Evid. 602, 703, 901. Fisher lacks foundation to testify as to what type of signature (*i.e.*, handwritten or Docusign) meets the standard for "executed by the author" required by 17 U.S.C. § 203(a) and further clarified by 37 C.F.R. § 201.10(c)(5), which determination is ultimately a legal question as to which Fisher is not qualified or competent to address.

Objection to paragraph 27 of the Declaration of Peter J. Byrne on the ground that Byrne's statement that he "executed" Plaintiffs' putative Notice of Termination

calls for a legal conclusion and thus lacks foundation. Fed. R. Evid. 602, 703, 901. Byrne lacks foundation to testify as to what type of signature (*i.e.*, handwritten or Docusign) meets the standard for "executed by the author" required by 17 U.S.C. § 203(a) and further clarified by 37 C.F.R. § 201.10(c)(5), which determination is ultimately a legal question as to which Byrne is not qualified or competent to address.

DATED:  April 24, 2023

SIDLEY AUSTIN LLP

By: */s/ Rollin A. Ransom*
       Rollin A. Ransom

*Attorneys for Defendant*
*Reservoir Media Management, Inc.*

DEFENDANT RESERVOIR MEDIA MANAGEMENT, INC.'S MEMORANDUM IN SUPPORT OF EVIDENTIARY OBJECTIONS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Defendant Reservoir Media Management, Inc., certifies that this brief contains 3,149 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 24, 2023

SIDLEY AUSTIN LLP

By: */s/ Rollin A. Ransom*
       Rollin A. Ransom

*Attorneys for Defendant
Reservoir Media Management, Inc.*

DEFENDANT RESERVOIR MEDIA MANAGEMENT, INC.'S MEMORANDUM IN SUPPORT OF EVIDENTIARY OBJECTIONS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT